UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE R. MACFARLANE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-1407-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born July 8, 1959, applied on October 21, 2011 for DIB, alleging disability beginning August 31, 2011.[1] Administrative Transcript ("AT") 171-74. Plaintiff alleged she was unable to work due to posttraumatic stress disorder ("PTSD"), a major depressive disorder,

---

[1] Plaintiff initially alleged a disability onset date of October 14, 2011, but subsequently amended that date to August 31, 2011. AT 171-74.

dysthymia, sleep apnea, a broken arm and wrist, nerve damage to one of her legs, permanent partial hearing loss in one ear, and permanent blind spots in both eyes. AT 197. In a decision dated February 6, 2014, the ALJ determined that plaintiff was not disabled.[2] AT 32-42. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since August 31, 2011, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease; arthritis; obesity; posttraumatic stress disorder (PTSD); and depression.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for lifting/carrying 10 pounds frequently and 20 pounds occasionally, standing/walking and sitting for 6 hours each in an 8-hour workday, occasional balancing, stooping, crouching, climbing, crawling, kneeling and stooping, the need to avoid concentrated exposure to heights/machinery, and limitations to simple routine tasks with occasional interaction with the public and coworkers.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on July 8, 1959 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2011, through the date of this decision.

AT 34-42.

II. <u>ISSUES PRESENTED</u>

Plaintiff's sole argument is that the ALJ erred by improperly considering and weighing the medical opinions of Dr. West, Dr. Woodward, and Dr. Tully when determining plaintiff's residual functional capacity ("RFC").

III. <u>LEGAL STANDARDS</u>

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

3

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.     ANALYSIS

A.  *The ALJ Properly Considered and Weighed the Opinion Evidence in the Record*

Plaintiff contends that the ALJ improperly considered the opinions of consultative examining psychologists Dr. West and Dr. Woodward because she assigned those opinions "great weight" despite the fact that both opined limitations that the ALJ appeared to impliedly reject by determining that plaintiff had a RFC that did not specifically contain such limitations. Plaintiff argues that the ALJ also erred by assigning reduced weight to the opinion of Dr. Tully, plaintiff's treating physician, without providing specific and legitimate reasons for doing so that were supported by substantial evidence from the record.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

4

1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### 1. Dr. West and Dr. Woodward

Dr. West performed a psychological evaluation of plaintiff on November 9, 2011 pursuant to plaintiff's self-referral and for the purpose of determining whether plaintiff was disabled within the meaning of the Act. AT 295-301. This examination consisted of a clinical interview with plaintiff, a review of plaintiff's then-existing medical records, and a battery of psychological functioning tests. Id. Based on the results of this examination, Dr. West opined that plaintiff was "likely unable to perform work related activities on a consistent basis requiring an eight-hour workday if she were in a position similar to her previous job requirements as a lawyer." AT 299. However, he also opined that plaintiff was "likely to succeed at a job that does is [*sic*] not related to her usual and customary job and the pace is kept at a moderate pace." Id. Dr. West opined

further that plaintiff "would likely have little to no cognitive impairments that would interfere or prevent her from performing very simple, concrete and repetitive tasks," was "likely to have little to no difficulty with complex tasks or moderately difficult work-related activities due to cognitive impairments." Id. Finally, he also determined that plaintiff likely had "mild to moderate difficulty interacting with others in a work related environment," but likely had "little to no difficulty comprehending or responding to difficult directions and/or completing complex tasks due to cognitive difficulties." AT 300.

Dr. Woodward performed a psychological evaluation of plaintiff on June 6, 2012 at the behest of the Arizona Department of Economic Security Disability Determination Service. AT 420-27. The examination consisted of a clinical interview with plaintiff and a review of plaintiff's medical records. AT 420. Based on this examination, Dr. Woodward opined that plaintiff was not impaired in the areas of comprehension and memory, but did "appear[ ] to have impairment in sustained concentration and persistence" that would cause plaintiff difficulties in "consistently carrying out detailed instructions[,] maintaining attention and concentration for extended periods[, and] performing activities within a schedule." AT 425. Dr. Woodward further opined that plaintiff "appear[ed] to have mild impairment in social interactions," and was "likely to have difficulty consistently working in coordination with or [in] proximity to others without being distracted by them." AT 425-26. Finally, Dr. Woodward opined that the evidence she reviewed indicated that plaintiff "would have difficulty adapting to new or unfamiliar situations or environments and responding appropriately to changes/increased stress in the work setting." AT 426.

The ALJ assigned Dr. West's and Dr. Woodward's opinions "great weight" because the moderate mental limitations provided in those opinions were consistent with plaintiff's medical records and because these physicians were specialists in the areas of mental functioning on which they opined. AT 40. Plaintiff does not appear to contend that this reasoning was improper. Rather, plaintiff argues that the limitations contained in the ALJ's RFC determination did not properly incorporate the functional findings contained in Dr. West's and Dr. Woodward's opinions, therefore implying that the ALJ improperly rejected certain aspects of those opinions

1  without providing any reasons for doing so.  Specifically, plaintiff asserts that the ALJ's RFC

2  determination did not take into account Dr. West's opinion that plaintiff's "work performance and

3  the ability to focus and concentrate for any extended period of time are likely to be compromised

4  due to mood impairments."  ECF No. 12 at 7 (quoting AT 300).  Plaintiff also contends that

5  ALJ's RFC determination did not account for Dr. Woodward's opinion that plaintiff's mental

6  impairments would:

7  
> likely contribute to difficulty consistently carrying out detailed
> instructions; maintaining attention and concentration for extended
> periods; performing activities within a schedule, completing a
> normal workday and workweek without interruptions from
> psychologically-based symptoms and performing at a consistent
> pace without an unreasonable number and length of rest periods.

11  ECF No. 12 at 7-8 (quoting AT 425).  Finally, plaintiff argues that the ALJ's RFC determination

12  also did not account for Dr. Woodward's recognition that "[t]here was evidence indicating that

13  [plaintiff] would have difficulty adapting to new or unfamiliar situations or environments and

14  responding appropriately to changes/increased stress in the work setting."  Id. at 8 (quoting AT

15  42).

16          As the Ninth Circuit Court of Appeals has held, an ALJ may interpret assessed limitations

17  into an RFC assessment without repeating each functional limitation verbatim in the RFC

18  assessment provided that the limitations contained in the RFC determination accurately capture

19  the claimant's level of functioning supported by the evidence.  Stubbs-Danielson v. Astrue, 539

20  F.3d 1169, 1173-74 (9th Cir. 2008).  Here, the ALJ's RFC determination was consistent with Dr.

21  West's and Dr. Woodward's findings, including those plaintiff argues the ALJ impliedly rejected.

22  Indeed, the ALJ's determination that plaintiff was limited to "simple routine tasks with occasional

23  interaction with the public and coworkers" fully encapsulated both physicians' opinions

24  indicating that plaintiff's mental impairments somewhat limited her abilities to engage in

25  sustained concentration and persistence, carry out detailed instructions, and adapt to changes in

26  the workplace.  AT 299-300, 425-26; Stubbs-Danielson, 539 F.3d at 1173-74 (holding that an

27  ALJ's RFC assessment that a claimant could perform simple, repetitive, routine tasks adequately

28

captured restrictions related to attention, concentration, pace, and adaption opined by the claimant's physicians). It also accurately captured both physicians' opinions that plaintiff had a mild-to-moderate impairment in her ability to engage in social interactions. AT 300 (Dr. West's opinion that plaintiff "is likely to have mild to moderate difficulty interacting with others in a work related environment due to her perceived perception that others do not seem to like her"), 425 (Dr. Woodward's opinion that plaintiff "appears to have mild impairment in social interaction based on behavioral observations"). Accordingly, the ALJ did not err in her assessment of Dr. West's and Dr. Woodward's opinions.

### 2. Dr. Tully

Plaintiff also contends that the ALJ erred by assigning reduced weight to Dr. Tully, plaintiff's treating physician, without providing a specific and legitimate reason for doing so that was supported by substantial evidence in the record.[3] Specifically, plaintiff asserts that the ALJ erred by rejecting Dr. Tully's opinion that plaintiff's pain and fatigue resulting from her physical impairments would frequently interrupt her ability to maintain attention, concentration, persistence, and pace.

On January 9, 2014, Dr. Tully issued a three-page checklist "Residual Functional Capacity Form" that contained his opinion on plaintiff's physical RFC. AT 505-07. Therein, Dr. Tully opined that plaintiff could lift 5 to 10 pounds "occasionally"[4] with her right upper extremity, "very seldom"[5] carry 5 to 10 pounds using that same extremity, and "very seldom" climb stairs,

---

[3] At one point in her motion for summary judgment, plaintiff asserts that the ALJ improperly rejected opinions issued by a Dr. Cushman. ECF No. 12 at 7. However, a review of the record reveals that not a single opinion was issued by this physician with regard to plaintiff's functional capacity. Moreover, the record does not even contain a single document referring to a Dr. Cushman. Aside from her arguments relating to Dr. West's and Dr. Woodward's opinions, the only opinion in the record that plaintiff brings into contention as having been improperly considered by the ALJ is that of Dr. Tully. Accordingly, the court presumes that plaintiff's reference to Dr. Cushman in her brief was a drafting error and that plaintiff intended to direct her argument regarding that physician's opinions towards the ALJ's consideration of Dr. Tully's treating opinion.

[4] Dr. Tully defined "occasionally" as up to one third of an 8-hour workday. AT 506.

[5] Dr. Tully defined "very seldom" as up to 1 hour total in an 8-hour workday. AT 506.

1 bend, stoop, crouch, kneel, and crawl. AT 506. He further opined that plaintiff was capable of
2 using her right hand every day for up to 2-and-a-half hours during an 8-hour workday, but that
3 she could not use her left hand for that same duration. Id. He also determined that plaintiff was
4 able to use both hands to engage in repetitive grasping, pushing/pulling, and fine manipulation
5 without limitation. AT 505. Dr. Tully further opined that plaintiff could sit for up to 3 hours at a
6 time and in total, stand for up to 1 hour at a time and 2 hours total, and walk for up to 20 minutes
7 at a time and 2 hours total in and 8-hour workday. AT 506. He also determined that plaintiff
8 would need to recline for 2 hours at a time and 8 hours total during an 8-hour workday. Id.

9 In addition, Dr. Tully opined that plaintiff could frequently engage in repetitive operation
10 of foot controls with her right foot, but could never do so with her left foot. AT 505. Dr. Tully
11 also opined that plaintiff would suffer from moderate to moderately severe pain, moderately
12 severe fatigue, and moderately severe stress on a frequent basis as a result of her impairments. Id.
13 Finally, Dr. Tully opined that plaintiff's impairments would cause her to miss work 25 percent of
14 the time, require her to alternate between sitting and standing positions every 15 minutes, and
15 require her to take breaks every 10 minutes for 20 minutes at a time. AT 507.

16 The ALJ assigned reduced weight to Dr. Tully's opinion "because the severity indicated
17 by [Dr. Tully] is not based upon medical documentation." AT 40. This was a specific and
18 legitimate reason for discounting Dr. Tully's opinion that was based on substantial evidence from
19 the record.

20 First, Dr. Tully's opinion came in the form of a three-page checklist report that provided
21 no explanation as to why he arrived at his conclusions regarding the impact of plaintiff's physical
22 impairments or cited to any examination notes or other medical evidence that would support the
23 extreme functional limitations he opined. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.
24 2012) (quoting Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)) ("We have held that the ALJ
25 may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases
26 of their conclusions.'"). Furthermore, the record contains no treating or other records from Dr.
27 Tully beyond his checklist opinion and several treating records issued by Dr. Miller indicating
28 that Dr. Tully had referred plaintiff to him based on plaintiff's claims of ear pain and hearing loss,

9

AT 444-48, 464-68, 471-72, 505-07.  See Meanel, 172 F.3d at 1113 (9th Cir. 1999) (holding that the ALJ properly discounted a treating physician's opinion that was "conclusory and unsubstantiated by relevant medical documentation"); Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)) ("[T]he ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'").  Finally, the other medical evidence in the record simply did not support the severe limitation contained within Dr. Tully's opinion.  See, e.g., AT 394-99, 408-12, 417, 425, 438-39, 482-84, 527, 531, 537-38.

In short, the ALJ's reasoning for discounting Dr. Tully's opinion — that there existed no medical documentation in the record that supported its extreme limitations — was proper and supported by substantial evidence from the record.  Accordingly, the ALJ did not err in her assessment of Dr. Tully's opinion.

V.   CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  March 30, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 macfarlane1407.ss